

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBBIE S. YOUNG,            :
                              :     Civil Action No. 1:00-CV-2191
          Plaintiff,     :
                              :     Judge Kane
          v.            :

STATE FARM MUTUAL      :
AUTOMOBILE INSURANCE  :
COMPANY,              :
                              :
          Defendant.    :

**FILED**
HARRISBURG, PA

OCT 3 1 2001

MARY E. D'ANDREA, CLERK
Per _____
         Deputy Clerk

## MEMORANDUM AND ORDER

Plaintiff Debbie S. Young filed this declaratory judgment action alleging violations of the
Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") by Defendant State Farm
Mutual Automobile Insurance Company. Currently pending in this matter are the parties' cross-
motions for summary judgment. The motions have been fully briefed and are ripe for
disposition. For the reasons that follow, Plaintiff's Motion will be DENIED and Defendant's
Motion will be GRANTED.

## I. Background

Plaintiff was injured when William Feltch's ("Feltch") vehicle, in which Plaintiff was a
passenger, was struck by a vehicle operated by Patricia Fauth ("Fauth"). Compl., ¶¶3-4; Answer,
¶¶3-4; Def.'s Mot. for Summ. J., ¶¶5-7; Pl.'s Answer to Def.'s Mot. for Summ. J., ¶¶5-7.
Plaintiff asserted a claim against Fauth, whose automobile insurance company settled it for
Fauth's liability coverage policy limit of $50,000. Compl., ¶7; Answer, ¶7; Def.'s Mot. for
Summ. J., ¶¶8-10; Pl.'s Answer to Def.'s Mot. for Summ. J., ¶¶8-10. Because Plaintiff believed
that this amount did not fully compensated her for her injuries, she filed a claim with Defendant

Certified from the record
Date _10-31-01_
Mary E. D'Andrea, Clerk
Per _____

and State Farm Fire and Casualty Insurance Company ("State Farm Fire") under the

underinsured motorist provisions of three insurance policies under which she was an insured.

Compl., ¶8; Answer, ¶¶8-9; Def.'s Mot. for Summ. J., ¶15; Pl.'s Answer to Def.'s Mot. for

Summ. J., ¶15.

Plaintiff was insured under three different automotive policies at the time of the accident:

State Farm policy 662-7833-D03-38F[1] ("Plaintiff's policy"), under which she was a named

insured; State Farm policy 719-4334-B03-38B[2] ("Lester Young's policy"), under which Lester

Young was a named insured and Plaintiff was qualified as an insured under the policy's

underinsured motorist coverage; and State Farm Fire policy 898-9245-B10-38B[3] ("Feltch's

policy"), under which William Feltch and Plaintiff were named insureds.  Compl., ¶¶5-6;

Answer, ¶¶5-6; Def.'s Mot. for Summ. J., ¶11; Pl.'s Answer to Def.'s Mot. for Summ. J., ¶11.

As a qualified insured under Lester Young's policy, Plaintiff received $15,000 in underinsured

motorist compensation from Defendant.[4]  Def.'s Mot. for Summ. J., ¶16; Pl.'s Answer to Def.'s

Mot. for Summ. J., ¶16.  This amount equals the policy limit stated on Lester Young's insurance

application.  See Def.'s Br. in Supp. of Mot. for Summ. J., Ex. B.

---

[1] This is the number that Plaintiff has supplied for this policy; Defendant refers to it as policy 6627-833-38F.  This difference is not material to the issues before the Court.

[2] This is the number that Plaintiff has supplied for this policy; Defendant refers to it as policy 7184-334-38A.  This difference is not material to the issues before the Court.

[3] This is the number that Plaintiff has supplied for this policy; Defendant refers to it as policy S989-245-38B.  This difference is not material to the issues before the Court.

[4] Plaintiff received an additional $30,000 in underinsured motorist compensation from State Farm and/or State Farm Fire.  See Compl., ¶10; Answer, ¶¶10-11.  The parties disagree over whether this payment was made pursuant one or both of Plaintiff's and Feltch's policies.  See Compl., ¶10; Answer, ¶¶10-11.  However, this disagreement is not material to the determination of Plaintiff's rights under Lester Young's policy.

2

Plaintiff filed the instant lawsuit, asserting that Defendant failed to comply with the MVFRL because it did not obtain a sufficient written request from Lester Young before it reduced his underinsured motorist coverage from $100,000/$300,000 stacked[5] to $15,000/$30,000 stacked.[6]  Compl., ¶¶12, 20; Pl.'s Br. in Supp. of Mot. for Summ. J. at 9-12. Plaintiff requests that this Court enter a declaratory judgment requiring arbitration of her claim for underinsured coverage.  Compl., ¶¶15-19; Pl.'s Br. in Supp. of Mot. for Summ. J. at 3-4.  In the alternative, she asks the Court to reform the policy itself to reflect underinsured motorist coverage of $100,000/$300,000 stacked.  Compl., ¶13 and at p. 5.

## II.  Discussion

### A.  *Standard of Review*

Before the Court are the parties' cross-motions for summary judgment.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which

---

[5] In the automobile insurance trade, two amounts separated by a slash indicate amounts of coverage per person and per accident.  For example, "$100,000/$300,000" means coverage of $100,000 per person and $300,000 per accident.  "Stacked" coverage means that the amount of coverage for each accident is multiplied by the number of insured vehicles.  Thus, if a policyholder has three insured vehicles and $15,000/$30,000 stacked coverage, that policyholder has coverage of $45,000 per person and $90,000 per accident.

[6] In the absence of a policyholder's written request for reduced coverage, the MVFRL requires that uninsured and underinsured coverage levels be equal to bodily injury coverage levels.  See 75 Pa. Cons. Stat. Ann. §§ 1731, 1734 (2001); Breuninger v. Pennland Ins. Co., 675 A.2d 353, 356 (Pa. Super. Ct. 1996).  Lester Young's policy provided $100,000/$300,000 coverage for bodily injury.  See Def.'s Br. in Supp. of Mot. for Summ. J., Ex. B.

3

that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). The Court must resolve all reasonable evidentiary inferences in the non-moving party's

favor. Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir.1997) (citing Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole

could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## B. *Arbitrability of Plaintiff's Claims*

Plaintiff first asserts that language in Lester Young's policy requires that her claim be

determined by arbitration because the parties have been unable to agree. Pl.'s Br. in Supp. of

Mot. for Summ. J. at 3-4. Defendant argues that the policy does not permit arbitration of

Plaintiff's claim. Def.'s Br. in Supp. of Mot. for Summ. J. at 3-6. The substance of this dispute

revolves around the meaning of two clauses in the uninsured and underinsured coverage section

of Lester Young's State Farm policy.[7] The first clause describes what issues must be decided by

arbitration:

> Two questions must be decided by agreement between the insured
> and us:
>
> 1. Is the insured legally entitled to collect
>    compensatory damages from the owner or driver of
>    an uninsured motor vehicle or underinsured motor
>    vehicle; and
>
> 2. If so, in what amount?
>
> If there is no agreement, these two questions shall be decided by
> arbitration at the request of the insured or us. The arbitrators'

---

[7] Defendant has filed two different policies as exhibits: State Farm Policy Form 9838.7, which was filed with Defendant's Answer, and State Farm Policy Form 9838.6, which was filed with Defendant's brief supporting its Motion for Summary Judgment. Although Defendant does not clearly assert which was issued to Lester Young, it is plain from the substance of the parties' filings that the 9838.7 policy was issued to Lester Young. Thus, the 9838.7 policy is the one at issue in this case and is the one to which the Court will refer.

decision shall be limited to these two questions.  The arbitrators
shall not award damages under this policy which are in excess of
the limits of liability of this coverage as shown on the declarations
page.

Answer, Ex. A, at 20 (State Farm Policy Form 9838.7) (emphasis omitted).  On the same page

and in the same section, the second clause elaborates what arbitration may not decide:

Arbitration shall not be a means of settlement to decide:

1.  any form of interpolicy or intrapolicy stacking;

2.  selection of coverage option, or waiver of such
    coverage;

3.  determination of residency in defining who is or is
    not an insured under these coverages;

4.  statutes of limitation; or

5.  determination of whether a claimant is an insured
    under these coverages.

Id. (emphasis omitted).  Plaintiff contends that the first clause requires her claim to be arbitrated

because the parties cannot resolve their dispute.  Pl.'s Br. in Supp. of Mot. for Summ. J. at 3.

That clause requires arbitration, she argues, because the parties are merely disputing the amount

of compensatory damages she was entitled to collect.  Id.  Defendant maintains that the dispute

does not involve the amount of compensatory damages, but rather the amount of underinsured

motorist coverage available to Plaintiff under the policy.  Def.'s Br. in Supp. of Mot. for Summ.

J. at 5.  As a result, Defendant asserts that the first clause does not apply.  See id.  Defendant

argues that this dispute is instead governed by the second clause, which disallows arbitration.

See id.

Under Pennsylvania law, "[i]t is well settled that when one party to an agreement seeks to

prevent the other from proceeding to arbitration, [the court's] inquiry is limited to determining:

(1) whether a valid arbitration agreement was entered into and, if so, (2) whether the dispute in

question is within the scope of the arbitration provision."  PBS Coal, Inc., v. Hardhat Mining,

5

Inc., 632 A.2d 903, 905 (Pa. Super. Ct. 1993); see also State Farm Mut. Auto. Ins. Co. v.

Coviello, 233 F.3d 710, 716 (3d Cir. 2000). In this case, only the second prong of the

inquiry–whether this dispute is within the scope of the arbitration provision–is at issue. The

scope of arbitration is determined by the intent of the parties, which in turn is ascertained by the

rules of contract law. See PBS Coal, 632 A.2d at 905; Coviello, 233 F.3d at 716. Agreements to

arbitrate must be strictly construed and should not be extended by implication. See PBS Coal,

632 A.2d at 905. Finally, if the agreement clearly includes or excludes particular issues or

remedies from arbitration, a court may so hold without submitting such matters to arbitration.

See id.

Under the first clause of Lester Young's policy, arbitration is available only when there is

disagreement between the parties regarding Plaintiff's entitlement to collect from an

underinsured or the amount to which Plaintiff is entitled. See Answer, Ex. A, at 20 (State Farm

Policy Form 9838.7). If the parties do proceed to arbitration, the first clause does not permit the

arbitrators to award damages above the limits reflected on the declarations page of the policy.

See id. The second clause explicitly disallows arbitration for disputes regarding selection or

waiver of a coverage option. See id.

The foregoing aspects of the policy illustrate that the parties intended to exclude this

dispute from arbitration. The policy's arbitration provision is clearly intended for those cases

where the parties cannot agree, within the limits of the policy, if and in what amount Plaintiff

should be compensated for her injuries. See Coviello, 233 F.3d at 717-18, 719, 720 (stating that

identical policy language to the one at issue has an "express limitation on its scope" and regards

only who is "at fault" and "any disagreement about the specific amount of damages"). This case,

on the other hand, involves a dispute over the amount of policy coverage that is available to

Plaintiff under Lester Young's policy. Interpreting the policy otherwise would nullify the plain language in the policy that forbids the arbitrators from awarding an amount in excess of the amounts reflected on the declarations sheet. See Coviello, 233 F.3d at 716 ("[W]hen construing an insurance contract, we are bound to give effect to clear and unambiguous language."). Furthermore, the second clause specifically forbids arbitration regarding selection and waiver issues; that is precisely what is at issue here. See Answer, Ex. A, at 20 (State Farm Policy Form 9838.7). Therefore, by the terms of the parties' agreement, this dispute need not be submitted to arbitration pursuant to the first clause of the arbitration provision. Accord Nationwide Mut. Ins. Co. v. Murphy, Nos. 98-CV-1692 and 98-CV-1884, 1998 U.S. Dist. LEXIS 17641, at *6-*7 (E.D. Pa. November 3, 1998) (holding, in case involving similar policy language, that "disputes over the limit of [the insured's underinsured motorist] coverage may not be forced into arbitration").

## C. *Reformation of Lester Young's Policy*

Plaintiff requests in the alternative that this Court reform Lester Young's policy because Defendant failed to obtain from Lester Young a valid request for reduction of coverage under the MVFRL. Pl.'s Br. in Supp. of Mot. for Summ. J. at 9-13. Defendant asserts that Lester Young's election constituted a valid written request under the MVFRL. Def.'s Br. in Supp. of Mot. for Summ. J. at 7-10. Defendant also claims that even if it did not comply with the requirements of the MVFRL, there is no remedy available to Plaintiff. Def.'s Br. in Supp. of Mot. for Summ. J. at 14-15.

The parties' argument centers on two portions of the MVFRL. First, section 1734 allows an insured to reduce his or her amounts of underinsured or uninsured motorist coverage as follows:

> A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa. Cons. Stat. Ann. § 1734 (2001).  Section 1791 provides insurers with a notice that, if provided to insureds at the application phase, constitutes conclusive notice of the MVFRL's provisions:

> It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required . . . .

75 Pa. Cons. Stat. Ann. § 1791 (2001).

The foregoing statutes do not contain a remedy for violation of their provisions.  Thus, the parties' arguments regarding the validity of the request for coverage reduction are inconsequential.  Overwhelming and consistent precedent has interpreted the MVFRL to preclude a remedy where it does not explicitly provide for one.  The Pennsylvania Supreme Court has repeatedly held that where the MVFRL does not provide a remedy, an insured cannot obtain relief.  See Donnelly v. Bauer, 720 A.2d 447, 454 (Pa. 1998); Salazar v. Allstate Ins. Co., 702 A.2d 1038, 1044 (Pa. 1997).  Furthermore, the Pennsylvania Superior Court has applied Donnelly and Salazar to section 1734–one of the sections at issue in this case–and has concluded that the section does not provide the remedy of reformation to an insured.  See Lewis v. Erie Ins. Exch., 753 A.2d 839, 846, 850-51 (Pa. Super. Ct. 2000); see also Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 639 n.4 (3d Cir. 2000) (citing Lewis for the proposition that section 1734 does not permit reformation).

The Third Circuit, although it has never reached this precise issue, has indicated its agreement with the position that these Pennsylvania court decisions do not permit reformation

under section 1734. See Buffetta, 230 F.3d at 639 (noting that the issue of reformation "appear[s] to favor [the insurer's] position"). Moreover, the Third Circuit has held that section 1791–the other section at issue in this case–does not provide a remedy for an insurer's noncompliance with that section. See Travelers Indem. Co. of Ill. v. DiBartolo, 171 F.3d 168, 174 (3d Cir. 1999). Finally, both the Middle and Eastern Districts of Pennsylvania, interpreting section 1734, section 1791, or both, have unanimously concluded that no remedy is available under these sections of the MVFRL. See, e.g., Clifford v. Prudential Prop. & Cas. Ins. Co., No. 99-CV-1788, 2001 U.S. Dist. LEXIS 13808, at *25-*30 (M.D. Pa. August 28, 2001); Foremost Ins. Co. v. Lynch, C.A. No. 00-5656, 2001 U.S. Dist. LEXIS 10866, at *7 (E.D. Pa. July 6, 2001); Nationwide Mut. Ins. Co. v. Buffetta, Civ. Action No. 98-6200, 1999 U.S. Dist. LEXIS 14676, at *8 (E.D. Pa. September 20, 1999); Nationwide Mut. Ins. Co. v. Murphy, Nos. 98-CV-1692 and 98-CV-1884, 1998 U.S. Dist. LEXIS 17641, at *10-*14 (E.D. Pa. November 3, 1998). Therefore, Pennsylvania law does not permit this Court to reform Plaintiff's policy under either section 1734 or section 1791 of the MVFRL.

Moreover, this conclusion is congruous with the underlying policy of the MVFRL, as stated by the Pennsylvania Supreme Court:

> The decision that the MVFRL does not provide a remedy is also supported by the policy behind the enactment of the MVFRL and its amendments, to stem the rising cost of insurance in the Commonwealth. Here, appellants . . . freely chose the limited tort option. In making this free choice, appellants received a greater reduction in their premiums than if they had chosen the full tort option. Appellants were content with this lower premium and their choice until they unfortunately were involved in automobile accidents with appellees. Now, appellants seek to escape from what they freely chose and paid for in order that they may obtain a full tort recovery. If this Court were to fashion a remedy not expressly provided for in the MVFRL, this Court would essentially contravene the cost containment policy behind the MVFRL

9

because allowing appellants the full tort coverage they seek would
result in giving appellants something for which no individual has
paid, which in turn, would result in insurance companies passing
on this extra costs to all other insureds.

Donnelly, 720 A.2d at 454.  Although Donnelly involved the election of full- or limited-tort

options, the policy enunciated therein readily applies to the instant case.  If this Court reformed

Lester Young's policy to allow Plaintiff to recover, she would benefit from something "for which

no individual has paid."  Id.  That result would directly contravene the cost containment policy of

the MVFRL.  See id.  Thus, the MVFRL does not permit this Court to reform Lester Young's

policy.

Plaintiff does not address the extensive case law that interprets the MVFRL to preclude a

remedy.  Instead, she relies heavily on Motorists Insurance Companies v. Emig and asserts that it

controls the outcome in this case.  This Court disagrees.  It is true that Emig allows insureds

relief under the MVFRL when the written request for reduced coverage is invalid.  See Motorists

Ins. Cos. v. Emig, 664 A.2d 559, 569 (Pa. Super. Ct. 1995).  However, Emig was decided prior

to the Pennsylvania Supreme Court's decisions in Donnelly and Salazar, both of which control

this Court's interpretation of the MVFRL.  See State Farm Mut. Auto. Ins. Co. v. Coviello, 233

F.3d 710, 713 (3d Cir. 2000) ("When ascertaining Pennsylvania law, the decisions of the

Pennsylvania Supreme Court are, of course, the authoritative source."); Prudential Prop. and Cas.

Ins. Co. v. Pendleton, 858 F.2d 930, 934 (3d Cir. 1988) (stating that the decisions of lower

Pennsylvania courts "should be given proper regard, but not conclusive effect.").  Furthermore,

as the Third Circuit has noted, there seems to be a "growing gap" between the Pennsylvania

Supreme Court and the lower Pennsylvania courts regarding proper interpretation of the

MVFRL.  See Travelers Indem. Co. of Ill. v. DiBartolo, 171 F.3d 168, 172 n.9 (3d Cir. 1999).

This undermines Emig's value in this case in light of Donnelly and Salazar. Finally, Emig is readily distinguishable from the instant case. There, the insurance agent used the wrong section of a policy change request form to attempt to alter the amounts of uninsured and underinsured coverages. See Emig, 664 A.2d at 564. The section designated for such changes was left completely blank. See id. In this case, unlike Emig, the section designated for underinsured motorist coverage was used; in this section the "Other" box was checked and "15/30" was written on the line just beside it. See Def.'s Br. in Supp. of Mot. for Summ. J., Ex. B. In addition, and again unlike Emig, Lester Young signed his initials just below where "15/30" was written. See id. The wholly defective written request in Emig simply does not compare with the request in this case. Thus, Plaintiff's claim that Emig is controlling is without merit. The MVFRL does not allow this Court to reform Lester Young's policy.

11

### III.  Order

Therefore, for all the reasons discussed above, **IT IS ORDERED THAT:**

1.      Plaintiff's Motion for Summary Judgment is **DENIED**.

2.      Defendant's Motion for Summary Judgment is **GRANTED**.

3.      It is **DECLARED** that Debbie S. Young is entitled to stacked underinsured motorist coverage in the amount of $15,000 per person and $30,000 per accident under State Farm policy 719-4334-B03-38B[8] issued to Lester L. Young.

4.      The Clerk of Court is directed to close the file.

Yvette Kane
United States District Judge

Dated: October 31, 2001.

---

[8] This is the number that Plaintiff has supplied for this policy; Defendant refers to it as policy 7184-334-38A.

12

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

October 31, 2001

Re:  1:00-cv-02191    Young v. State Farm Mutual In

True and correct copies of the attached were mailed by the clerk
to the following:

Michael Saltzburg, Esq.
Bennett, Bricklin & Saltzburg LLP
1601 Market Street
16th Floor
Philadelphia, PA  19103

Dale E. Anstine, Esq.
Two West Market Street
P.O. Box 952
York, PA  17401

Thomas P. Lang, Esq.
Law office of Dale E. Anstine
2 West Market St.
P.O. Box 952
York, PA  17405

cc:
Judge                        ( ✓ )              ( ) Pro Se Law Clerk
Magistrate Judge             ( )               ( ) INS
U.S. Marshal                 ( )               ( ) Jury Clerk
Probation                    ( )
U.S. Attorney                ( )
Atty. for Deft.              ( )
Defendant                    ( )
Warden                       ( )
Bureau of Prisons            ( )
Ct Reporter                  ( )
Ctroom Deputy                ( )
Orig-Security                ( )
Federal Public Defender      ( )
Summons Issued               ( ) with N/C attached to complt. and served by:
                                 U.S. Marshal ( )    Pltf's Attorney ( )

Standard Order 93-5          ( )
Order to Show Cause          ( ) with Petition attached & mailed certified mail
                                 to: US Atty Gen   ( )  PA Atty Gen ( )
                                     DA of County  ( )  Respondents ( )

10-31-01